Matter of Lincoln & Brennan, LLC v Prudential Assigned Settlement Servs. Corp. (2026 NY Slip Op 50374(U))

[*1]

Matter of Lincoln & Brennan, LLC v Prudential Assigned Settlement Servs. Corp.

2026 NY Slip Op 50374(U)

Decided on March 23, 2026

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 23, 2026
Supreme Court, Kings County

In the Matter of the Application of Lincoln & Brennan, LLC, Petitioner,

againstPrudential Assigned Settlement Services Corporation, 
 THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, and LAUREN BROWNLEE, Respondents.

Index No. 539057/2025

Sacco & Fillas LLP, Forest Hills (Patricia Lynch of counsel), for petitioner. 
Lauren Brownlee, respondent pro se. 

Aaron D. Maslow, J.

The following numbered papers were usedon thispetition:NYSCEF Document Numbers1-17.
Upon the foregoing papers,having heard oral argument, and due deliberation having been had, the within petition for approval of a transfer of structured settlement proceeds is determined as follows.
IntroductionIn the within special proceeding, petitioner Lincoln & Brennan, LLC ("Lincoln") has applied, pursuant to the Structured Settlement Protection Act (hereinafter "SSPA"), General Obligations Law § 5-1701et seq., for the approval of the transfer of two payments, one for [*2]$45,000.00 on June 27, 2031 and one for $100,000.00 on June 27, 2036,due respondent Lauren Brownlee("Ms. Brownlee"), under a structured settlement agreement.This special proceeding was commenced by Lincoln, having been brought on by way of an order to show cause in which Ms. Brownlee, Prudential Assigned Services Corporation, and Prudential Insurance Company of America were named as respondents. Lincoln's petition states that in exchange for Ms. Brownlee assigning her rights to the aforesaid settlement proceeds, Lincoln would pay her $62, 823.17.
Legal Background
Prior to approval or denial of an application to transfer future proceeds from a structured settlement, it is the duty of the court to analyze the details surrounding the request.
"Enacted in 2002, the purpose of the SSPA, as reflected in the legislative materials, was to establish 'procedural safeguards for those who sell settlements that are awarded as a result of litigation,' due to a recognition that '[m]any of the people who receive such settlements are being compensated for very serious, debilitating injuries, and have been unfairly taken advantage of in the past by the businesses that purchase their settlements' " (Pinnacle Capital, LLC vO'Bleanis, 214 AD3d 913, 915 [2d Dept 2023] [quoting NY Atty Gen Memin Support, Bill Jacket, L 2002,ch 537 at 5].)
"Structured settlements serve strong public policyobjectivesin that they afford long-term financial protection for injury victims and their families. They protect against loss or premature dissipation of lump sum recoveries. They avoid the shift of responsibility for victims' care to publicassistanceprograms. [¶] In the past several years there has been an explosion of efforts by unregulated entities, known as "factoring companies," to separate recipients of structured settlement payments from those payment streams. The subsequent factoring of structured settlement payments undermines the public policy objectives of structured settlements. They deprive injury victims and their families of the long-term financial security their settlements are designed to provide. The transfer can involve discounts corresponding to over 50% interest per year." (Letter from Life Ins. Council of NY, Inc., Bill Jacket, L 2002,ch 537 at 7.)
Yet, "The sale of structured settlements can serve the interest of a victim who has been awarded compensation for injuries or other damages, particularly if the victim has immediate needs that must be met. However, such persons may be particularly vulnerable to the overbearing sales tactics of structured settlement purchasers. The mandated judicial review of all such sales, coupled with the required disclosures of amounts that will be realized from the sale and the discount rate, should help ensure that the best interests of the payee, and his or her family, are served." (NY Atty Gen Mem in Support, Bill Jacket, L 2002,ch537 at 6.)
"Any purported transfer entered into after July 1, 2002 without court approval is unenforceable, and payees may not waive their rights under the Act" (Matter ofLaw First Fin., LLC v Jamestown Life Ins. Co., 72Misc3d 1207[A], 2021 NY Slip Op 50672[U] [Sup Ct, Erie County 2021], citing General Obligations Law §§ 5-1706,5-1708 [a]).
"[L]egislative history makes clear that to avoid the victimization so prevalent in the [*3]industry, the courts are intended to examine the various statutory criteria and determine whether the proposed sale will truly serve the 'best interest' of the payee" (Matter of 321 Henderson Receivables, L.P. v Martinez, 11Misc3d 892, 895 [Sup Ct, New York County 2006]; see also General Obligations Law § 5-1706 [b]).
"Clearly, the New York State Legislature in enacting SSPA and in empowering the courts with the discretion to determine whether the terms of a proposed transfer of future payments are fair and reasonable did not intend for the courts to be mere rubber stamps" (Matter of Settlement Capital Corp. [Ballos], 1 Misc 3d 446, 461 [Sup Ct, Queens County 2003]). When the original 2002 legislation enacting SSPA was amended in 2004 to clarify that hardship was not a prerequisite for approving a sale of structured settlement proceeds, the Attorney General wrote that "we do note that there has been a very positive trend among members of the Judiciary to be sparing in approval of such sales, as was intended where the original legislation was drafted. Therefore, while hardship may not be required as a specific finding should this bill be approved, there is in our view, no reason for judges to refrain from weighing that factor, along with any other consideration they deem relevant in determining the 'best interest' criterion." (NY Atty Gen Mem in Support, Bill Jacket, L 2004,ch480 at 7.)
Accordingly, in the present decision, the Court looks first to the statutory requirements of the SSPA, followed by an analysis of Ms. Brownlee's best interest.
Compliance with Procedural Requirements
The SSPA contains various requirements.The Court finds that the following requirements were complied withby Petitioner in the papers submitted:
• At least ten days before the structured settlement transferor ("payee" is the statutory term, because the transferor has been or will be paid the structured settlement payments) signs a transfer agreement, the transferee must provide a disclosure statement to the transferor, setting forth nine informational matters (see General Obligations Law § 5-1703). NYSCEF Doc No. 12 contains the disclosure statement provided to Ms. Brownlee.• The special proceeding seeking approval of the transfer shall be commenced by order to show cause in the Supreme Court of the county where the transferor resides or where the structured settlement was approved (see id. § 5-1705 [a], [b]). Ms. Brownlee resides in Kings County, so commencement of this special proceeding via order to show cause in Supreme Court, Kings County, by Lincoln, is proper.• A copy of the order to show cause and petitionmustbe served upon all interested parties at least twenty days before the time at which the petition is noticed to be heard (see id.§ 5-1705 [c]).This was effectuated (see NYSCEF Doc No.13).• The transferor has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received such advice or [*4]knowingly waived such advice in writing(see General Obligations Law § 5-1706 [c]).Ms. Brownlee acknowledged receipt of the advice and waived 
her right to seek independent professional advice (see NYSCEF Doc Nos. 6, 7).• A petition for approval of a transfer of structured settlement payment rights shall include a copy of the transfer agreement,a copy of the disclosure statement and proof of notice of that statement pursuant to General Obligations Law § 5-1703, and a listing of each of the payee's dependents, together with each dependent's age (see General Obligations Law § 5-1705 [d] [i], [ii], [iii]). These were all complied with (see NYSCEF Doc Nos. 3, 5, 11, 12, 16).• The transferor is required to attend the court hearing on the petition, unless attendance is excused for good cause (see General Obligations Law § 5-1705 [e]). Ms. Brownlee attended thehearing.General Obligations Law § 5-1705 [d] [iv] requires that apetition for approval of a transfer of structured settlement payment rights include a statement setting forth whether there have been any previous transfers or applications for transfer of the structured settlement payment rights and giving details of all such transfers or applications for transfer. Lincoln's petition did not include this information, but Ms. Brownlee testified that there were no previous transfers.
Best Interest of the Transferor
General Obligations Law § 5-1706 (b) provides:
No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been authorized in advance in a final order of a court of competent jurisdiction based upon express findings by such court that:
 ...(b) the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents; and whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, are fair and reasonable [emphasis added]. The court in Matter of Settlement Capital Corp. (Ballos), 1 Misc3d at 455, articulated the meaning of the phrase "best interest of the payee" in this context as follows: 
After an independent analysis of decisional law in this and other jurisdictions, and consideration of the legislative history of SSPA, this court determines that the best interest prong should be assessed on a case-by-case basis, giving specific consideration to such factors as the payee's age; mental and physical capacity; maturity level; ability to [*5]show sufficient income that is independent of the payments sought for transfer; capacity to provide for the welfare and support of the payee's dependents; the need for medical treatment; the stated purpose for the transfer; and the demonstrated ability of the payee to appreciate the financial terms and consequences of the proposed transfer based upon truly independent legal and financial advice.Additionally, courts must take into consideration "whether the proposed transfer of structured settlement payments, which were designed to preserve the injured person's long-term financial security, will provide needed financial rescue without jeopardizing or irreparably impairing the financial security afforded to the payee and his or her dependents by the periodic payments" (id.). 
Ms. Brownlee does not have any dependents. Additionally, it is apparent to this Court that she possesses sufficient mental capacity. Ms. Brownlee is a 19-year-old adult who up until recently was in foster care. A month before she turned 18, she received a letter in the mail notifying her she would be receiving payment on her 18th birthday, June 27, 2024. She subsequently received a check for $40,000.00, which she used in part to purchase necessities her foster parents were not providing her with, like clothes, food, and hygiene items. Upon her 19th birthday, Ms. Brownlee received another check for $40,000.00. The following month, July 2025, she used that money to move out of her foster parents' home into her own apartment in Crown Heights, Brooklyn.
Ms. Brownlee testified that she became aware that she could sell her structured settlement proceeds via email. She has no knowledge of how the senders of the emails — there were more than one email — knew of her settlement or her email address. Ms. Brownlee testified that she received around three emails from the same person before deciding that she wanted to sell her settlement and contacted the person who had emailed her. She testified that she then had a phone conversation discussing the sale with Paul Wilson. Ms. Brownlee testified that she and Mr. Wilson have had many conversations, but she has never met him in person and does not know the name of the company she wishes to sell her settlement proceeds to.
Ms. Brownlee testified that she received emails from other companies stating that they would offer her more money to sell her structured settlement, but that Lincoln offered her the highest amount. She discussed these other offers with Mr. Wilson and was able to negotiate an increase from $50,870.91 to $62,823.17.
Ms. Brownlee testified that she asked her birth mother about the structured settlement, and her mother was evasive about the circumstances that led to the creation of the settlement,although shewas supportive of Ms. Brownlee's intentions to sell it.Ms. Brownlee testified that she has an older sister whom she is not in touch with andthat she has no financial support from any family members.
Ms. Brownlee testified that she currently has no form ofincome besides her structured settlement proceeds. She testified that she received $260.00 a month in food stampslast year.She testified that most of the money she has received has been spent. Out of the $80,000.00 received, [*6]she estimates that $20,000.00 is left.
Ms. Brownlee testified that she intends to use the $62,823.17 to be paid from Lincoln as follows: to attend the Swedish Institute in New York to become a medical assistant for about $24,000.00 in tuition; to move into a better apartment in a better neighborhood; to pay her rent; and to help with her daily needs. She testified that her rent is currently $1,000.00,and she has expenses of light, gas, her phone bill, and her credit card bill. Ms. Brownlee listed in the Declaration in Support of Request to Transfer Structure Settlement Payments her desire to use the proceeds to purchase a car; however, she did not testify to this incourt (see NYSCEF Doc No.6, ¶4).
"The interest of public policy is preserved by [structured settlements to resolve tort claims] because it ensures a compensation stream to pay for future care or needs. It serves to prevent settlement funds from being dissipated, and such injuries becoming the responsibility of the public healthcare system" (Mem NY Consumer Protection Board in Support, Bill Jacket, L 2010, ch 511 at 14-15). "Consumers of one-time structured settlement payment services must be accountable to the court and provide a justifiable reasonfor amending the court[ ] order and seeking to liquidate their structured settlement into a lumpsum payment" (id. at 15).
As acknowledged above, the legislative purposes underpinning the SSPA were both societaland personal in nature. Both thepublic at large needed to be protected as did compensated tort victims. To approve the transfer at bar in this special proceeding, this Court would undermine the legislative priorities of avoiding tort victims from becoming public charges, preventing resourceful factoring companies from preying on them, enabling individuals who have serious needs for immediate cash to obtain it, requiring complete disclosure of transfer situations, and facilitating courts' informed consideration of transfers. (See supra at 1-2.) 
The SSPA was created to allow courts to act as a shield preventing vulnerable individuals from being exploited by those more privileged in their knowledge of the intricacies of the financial system. The discretionary nature of the SSPA grants the courts the duty to analyze applications substantively while simultaneously scrutinizing parties' adherence to procedural rules. This Court performs its review of the proposed transfer herein, bearing in mind the legislative goals in enacting the SSPA.
The Court is constrained to reject the proposed transfer based on the best interest of the payee, taking into consideration the payee's age, maturity level, stated purpose for the transfer, and demonstrated ability to appreciate the financial terms and consequences of the proposed transfer. This Court is of the view that Ms. Brownlee's interests would be better served by receiving the two lump sum payments for $45,000.00 and $100,000.00 in 2031 and 2036 respectively.
Ms. Brownlee is currently 19 years old and by the time she receives the last payment, she will be 30 years old.Structured settlements are designed to preserve long-term financial security. Approving the transfer would deprive Ms. Brownlee of significant future financial resources at a stage in her life when those funds may be particularly important. Given her young age and [*7]evolving life circumstances, there is a substantial likelihood that her financial needs and priorities maychange over time, and she mayultimately regret relinquishing these future payments at a steep discount.
Furthermore, Ms. Brownlee's proposed uses of the settlement proceeds do not demonstrate an immediate financial necessity that would warrant the loss of such substantial future payments.Currently, Ms. Brownlee's income from the proceeds is sufficient to support her needs. She currently receives $260.00 a month in food stamps and $40,000.00 a year from her structured settlement with the last payment of $40,000.00 scheduled for June 27, 2027, not including the two payments she wishes to sell, which total $145,000.00. She has not indicated serious need for immediate funds. While Ms. Brownlee understandably wishes to improve her living situation and pursue vocational training, these goals do not constitute the type of financial emergency that would warrant the sale of future payments.
Additionally, while it is understandable that Ms. Brownlee's intentions are admirable, she seeks to accomplish them by selling her structured settlement payments at an unfair and unreasonable discount. In Lincoln's New York Disclosure Statement, it states that "[t]he discounted present value of the payments to be transferred, which is the calculation of current value of the transferred structured settlement payments under federal standards for valuing annuities is: $92,570.62" (NYSCEF Doc No. 12 at PDF 2), which is significantly more than $62,823.17. Furthermore, according to the said Disclosure Statement, "[b]ased on price quotes from National Life Insurance Company and Equitrust Life Insurance Company the current cost of a comparable annuity for the aggregate amount of payments being transferred is $88,663.79 and $88,607.01" (id.). The agreed upon price between Lincoln and Ms. Brownlee of $62,823.17 is significantly less than these would-be prices for an annuity of $145,000.00.
Ms. Brownlee has not demonstrated a sufficient understanding of the consequences of the proposed transfer. Ms. Brownlee testified that she became aware of the possibility of selling her structured settlement through unsolicited emails, she never met the person she agreed to sell her settlement proceeds to, and she did not know the name of the company to which she was selling her payment rights. These circumstances, together with her testimony that much of the previously received funds have already been spent and that she has had limited financial guidance from family members, give the Court pause as to whether the long-term financial consequences of the proposed transfer have been fully appreciated.
The Court finds that the proposed sale of Ms. Brownlee's structured settlement proceeds is not in her best interest.
Conclusion
For the foregoing reasons, it is hereby ORDERED, ADJUDGED, and DECREED as follows:
(1) The findings necessary for a court to approve a transfer of structured settlement payment rights pursuant to General Obligations Law § 5-1706 have not been proved.
(2) The application by Petitioner Lincoln & Brennan, LLC to approve a transfer of $145,000 of respondent Lauren Brownlee's future structured settlement proceeds payments for June 27,2031 and June 27,2036 for $62,823.17 is DENIED.
(3) The within special proceeding is dismissed.
(4) Within ten days of the entry of this decision, order, and judgment, Petitioner Lincoln & Brennan, LLC shall serve serve a copy of it upon all respondents herein (a) by first-class mail (with a certificate of mailingbeing obtained) to all known residence and business addresses, (b) by certified mail, return receipt requested, to all known residence and business addresses, and (c) by email to all known email addresses for them; proof of said service shall be filed on NYSCEF within ten days after service is effectuated.
(5) A copy of this decision, order, and judgment shall be annexed to any future petitions commencing proceedings in this or any other county under the Structured Settlement Protection Act seeking approval of transfers of any and all remaining payments due respondent Lauren Brownlee pursuant to this structured settlement.